## MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Plaintiff and Appellee,

v.

## Jill M. PAYNE and Terry J. Stephenson, Defendants and Appellant.

### No. 860268.

Supreme Court of Utah.

Oct. 16, 1989.

James F. Housley, Salt Lake City, for Payne.

Floyd A. Jensen, Salt Lake City, for Mountain States Tel. and Tel. Co.

DURHAM, Justice:

Appellant Jill M. Payne contends that the trial court committed reversible error in finding her liable for writing checks drawn on insufficient funds pursuant to Utah Code Ann. § 7–15–1 (1988).[1] We reverse.

Appellant was employed as a secretary/bookkeeper for NAMCO Corporation from 1981 to 1982. As part of her assigned duties, appellant, an authorized signatory, prepared and signed checks drawn upon the corporate accounts in payment of corporate obligations at the direction of corporate officers. She had no interest, beneficial or otherwise, in the checking account, the funds in the checking account, or the corporation.

A number of checks written to Mountain States Telephone and Telegraph Co. (Mountain States) for services received by NAMCO and signed by appellant were drawn on insufficient funds. As a result, Mountain States brought suit against appellant and her boss, defendant Terry J. Stephenson, for liability under Utah Code Ann. § 7–15–1. Both defendants were properly served. Stephenson failed to appear or answer, and judgment by default was entered against him on December 9, 1982. Appellant wrote a timely letter to plaintiff's counsel, referring to the summons and explaining that she was a mere employee and had signed the checks at Stephenson's direction. No further action was

taken regarding the claim against appellant until approximately thirty-nine months later, when Mountain States filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, contending that appellant answered the complaint but did not deny liability for the debt. The trial court entered an order granting plaintiff's motion for judgment after a hearing in which appellant appeared pro se. Judgment for $2,896.76 was entered on April 8, 1986.

Appellant thereafter arranged for *pro bono* counsel. Appellant's attorney filed alternative motions for relief from order, amendment of judgment, new trial, judgment n.o.v., and findings of fact and conclusions of law. After a hearing on appellant's alternative motions, the trial judge denied them, concluding that Utah Code Ann. § 7–15–1 imposed strict liability on appellant. The trial judge subsequently signed an order granting plaintiff's motion for judgment on the pleadings. The trial judge declined to enter findings of fact or conclusions of law.

Appellant argues that the trial court committed reversible error in construing section 7–15–1 as imposing strict liability on her for signing corporate checks on behalf of her employer in payment for corporate obligations. Appellant also argues that construing section 7–15–1 to impose strict liability renders the statute unconstitutional under the due process provision of the fourteenth amendment of the United States Constitution and article I, section 7 of the Utah Constitution. We address the strict liability issue first.

The statute at issue, Utah Code Ann. § 7–15–1 (1988), states in pertinent part:

(1) Any person who makes, draws, signs or issues any check, draft, order or other instrument upon any depository institution, whether as corporate agent or otherwise, for the purpose of obtaining from any person, firm, partnership, or corporation any money, merchandise, property, or other thing of value or paying for any service, wages, salary or rent, shall be liable to the holder of the

check, draft, order, or other instrument if the check, draft, order or other instrument is not honored upon presentment and is marked "refer to maker" or the account with the depository upon which the check, draft, order, or other instrument has been made or drawn, does not exist, has been closed, or does not have sufficient funds or sufficient credit with such depository for payment of the check, draft, or other instrument in full.

In this case, it is uncontroverted that defendants signed and issued the checks in question, that the checks were drawn on First Security Bank of Utah for payment of telephone services provided by Mountain States to NAMCO Corporation, that the checks were dishonored upon presentment, and that Mountain States complied with the notice requirements of section 7–15–2. Because there are no disputed issues of material fact, the only issue to be decided is whether, as a matter of law, appellant may be held liable under section 7–15–1.

■ As originally enacted, section 7–15–1 required proof of intent to defraud before liability attached. The statute stated in pertinent part: "any person who willfully with intent to defraud makes ... any check...." 1969 Laws of Utah ch. 240, § 1(1). When the statute was amended in 1979, the words "willfully with intent to defraud" were taken out. Although the trial court did not make findings of fact or conclusions of law, it appears that the trial judge believed that the removal of the words "willfully with intent to defraud" eliminated the necessity of establishing intent or knowledge as a prerequisite to recovery on a check written on insufficient funds. Absent a determination that section 7–15–1 imposes personal liability without intent to defraud or knowledge, appellant would have no liability for the corporate debts of her employer. *See Howells, Inc. v. Nelson*, 565 P.2d 1147 (Utah 1977).

Section 7–15–1 was repealed and reenacted without substantial changes in 1981. Nothing in the language of Senate Bill 134, which reenacted section 7–15–1, reflects the intended scope of that section in its present form. Further, no cases exist that clarify how to construe section 7–15–1 as it appeared in 1979 and 1981. Guidance can be found, however, from cases in which this Court has construed other statutes. For example, in *Stanton Transportation Co. v. Davis*, 9 Utah 2d 184, 341 P.2d 207 (1959) (construing statute amended by the legislature in 1981), this Court stated in a unanimous opinion:

When uncertainty exists as to the interpretation and application of a statute, it is appropriate to look to its purpose in the light of its background in history, and also to the effect it will have in practical application.... While it is true that our statutes are to be liberally construed to give effect to their purpose and to promote justice, it is equally true that they should not be distorted beyond the intent of the legislature.

*Id.* at 209. The opinion continued:

If a departure from the traditional coverage of the lien laws is to be effected it should be by a clearer manifestation of intent of the legislature than is shown in the manner in which this statute has come to its present form.

*Id.* at 210. Another important principle of statutory construction was recognized in *Masich v. U.S. Smelting*, 113 Utah 101, 191 P.2d 612 (1948), when this Court stated:

One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.

*Id.* at 108, 191 P.2d at 616.

It seems unlikely to us that the legislature intended the statute at issue in this case to subject innocent employees who sign checks at the direction of their employers to personal liability. In the case before us, the benefit of Mountain States' services went to a third party, appellant's employer. Appellant had no interest, beneficial or otherwise, in the checking account, the funds in the account, or in the corporation. Furthermore, appellant had no knowledge or reason to believe that the checks in question were drawn on insufficient funds. She functioned merely as a

scribe in executing checks for her employer. In light of such cases as *Stanton Transportation Co. v. Davis* and *Masich v. U.S. Smelting*, we may construe section 7–15–1 to require that the signator of a bad check personally receive benefits, services, or money transfer or, in the alternative, have actual knowledge that the check is drawn on insufficient funds in order to be held liable.

The law governing liability and negotiable instruments is found in section 3–403 of the Uniform Commercial Code, Utah Code Ann. § 70A–3–403 (1980). Section 70A–3–403 states in pertinent part:

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representatives signed in a representative capacity;

(b) *except as otherwise established between the immediate parties*, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(Emphasis added.)

Where possible, statutes should be construed to be mutually consistent. Section 70A–3–403(2)(b), which allows for the introduction of extrinsic evidence to determine the intention of the parties to the instrument when the question of personal liability of the signator is at issue, would be inconsistent with section 7–15–1 if the latter were construed to impose strict liability. Therefore, if section 7–15–1 is read as imposing strict liability, amended section 70A–3–403 would have to be read to exclude checks from its operation, and the uniform application and the liberal construction intended for the Uniform Commercial Code would be defeated. If, however, section 7–15–1 is interpreted as merely providing an expedited remedy against a party who is liable under section 70A–3–403, then section 7–15–1 can reasonably be construed to avoid impliedly repealing section 70A–3–403.[2]

A final reason for our construction of section 7–15–1 as requiring knowledge or intent is that it avoids the .due process challenge upon which appellant relies. If there are alternative statutory constructions possible, one rendering a statute constitutional and the other unconstitutional, the former should be adopted. *Critchlow v. Monson*, 102 Utah 378, 131 P.2d 794 (1942). Although we do not treat appellant's due process claims, we note that they raise sufficient doubt about the constitutionality of the construction of the statute urged by plaintiff to create a policy preference for the narrower construction we have adopted. We assume that the legislature intended a fair result.

Reversed.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.

---

2. Section 70A–1–104 provides: "This act being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided."